**SO ORDERED.**

**SIGNED this 11 day of February, 2008.**

_____
**JAMES D. WALKER, JR.
UNITED STATES BANKRUPTCY JUDGE**
_____

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF GEORGIA
ATHENS DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 7 |
| | ) | CASE NO. 07-30114-JDW |
| DAVID L. WHEELUS and | ) | |
| DEBORAH WHEELUS, | ) | |
| | ) | |
| DEBTORS. | ) | |
| | ) | |
| TARPON POINT, LLC and | ) | ADVERSARY PROCEEDING |
| JACK W. SLOAN, III, | ) | NO. 07-3022 |
| | ) | |
| PLAINTIFFS, | ) | |
| | ) | |
| VS. | ) | |
| | ) | |
| DAVID L. WHEELUS and | ) | |
| DEBORAH WHEELUS, | ) | |
| | ) | |
| DEFENDANTS. | ) | |

BEFORE

JAMES D. WALKER, JR.

UNITED STATES BANKRUPTCY JUDGE

<u>COUNSEL</u>

For Plaintiffs:    Eugene D. Butt
                   Post Office Box 29
                   Covington, Georgia 30015

For Defendants:    Carol S. Dew
                   Post Office Box 30
                   Monroe, Georgia 30655

**MEMORANDUM OPINION**

This matter comes before the Court on Plaintiffs' complaint to determine the dischargeability of a debt. This is a core matter within the meaning of 28 U.S.C. § 157(b)(2)(I). After considering the pleadings, the evidence, and the applicable authorities, the Court enters the following findings of fact and conclusions of law in conformance with Federal Rule of Bankruptcy Procedure 7052.

**Findings of Fact**

In 2002, Defendant-Debtors David and Deborah Wheelus formed a limited liability company[1] with Plaintiff Jack Sloan and Ronnie Floyd, who is not a party to this case. The business sold heating, ventilation, and air conditioning equipment. Debtors managed the daily operations of the business. They provided a financial accounting to Mr. Sloan and Mr. Floyd at monthly meetings. In late 2003, the members discussed a buyout by Debtors of Mr. Sloan and Mr. Floyd's interest in the business, at a rate of $500 per month for 20 months. However, the deal was never consummated.

On January 14, 2004, Mr. Sloan and Mr. Floyd ousted Debtors as managers, based on concerns that Debtors were mismanaging the business and misappropriating business funds for their personal use. Thereafter, Debtors resigned from the LLC, effective February 1, 2004. After the business closed, Mr. Sloan and Mr. Floyd personally paid business debts of approximately $90,000, although they conceded they were not personally liable for those debts.

---

[1] Although all the parties refer to themselves as "partners," rather than "members," they have stipulated the business was an LLC.

Plaintiffs sued Debtors in state court, and that litigation is on-going. After Debtors filed a Chapter 7 petition, Plaintiffs filed this adversary proceeding, seeking a determination that the debt owed to them is nondischargeable due to fraud or defalcation. The Court held a trial on January 22, 2008.

At trial, Mr. Sloan and Mr. Floyd testified Debtors had used company funds to pay for health insurance for their daughter, who worked part-time at the business, to pay for lawn care at their residence, to buy a pool heater for their personal use, and to purchase excessive office supplies. Plaintiffs also testified Debtors sold equipment on credit in violation of company policy, provided rent-free business space and free auto maintenance to a third party, and failed to record the payee for many transactions from petty cash. Finally, Plaintiffs contended Debtors raided the petty cash and company bank account after being removed as managers. Many of these allegations amount to nothing more than disagreement with business decisions and are irrelevant to the complaint.

In response, Debtors produced credible evidence in the form of receipts, invoices, and other financial documents, and expert testimony of a certified public accountant to refute many of Plaintiff's allegations. For example, the lawn care payments were for services primarily provided to maintain the business premises. Debtors reimbursed the company for the one occasion the lawn service mowed the lawn at Debtors' residence. Debtors purchased the pool heater at the request of a customer and resold it to that customer at a mark-up. Debtors kept vouchers for all petty cash transactions and attached receipts to the vouchers. Debtors did remove money from the company checking account after January 14, 2004, but that money was disbursed to pay business expenses, including sales and use taxes, merchant credit-card fees, and

4

business credit-card bills. Plaintiffs offered no evidence that Debtors took any money from the account that was unaccounted for. Debtors did provide rent free business space and transportation to a third party. However, they did so because the man installed some of the HVAC equipment purchased by the company's customers.

As for the petty cash, at the time of their termination as managers, Debtors had more than $5,000 in petty cash that they took home for safekeeping. Debtors withheld certain amounts they believed they were owed, including $3,500 they had loaned to the business, $1,000 in payroll taxes that had been withheld from their paychecks but never submitted to the taxing authorities, and $200 for wages owed to their daughter. They returned $300 to Plaintiffs.

After considering the evidence and legal arguments presented by the parties, the Court finds no basis for excepting Debtors' liability to Plaintiffs–if any–from discharge.

## Conclusions of Law

Plaintiffs sought a determination that any debt they are owed is nondischargeable due to fraud pursuant to 11 U.S.C. § 523(a)(2)(A) or fiduciary defalcation pursuant to § 523(a)(4). During the trial, Plaintiffs abandoned their fraud claim. Therefore, the only question is whether Debtors engaged in defalcation. Section 523(a)(4) provides, "A discharge under section 727 ... of this title does not discharge an individual debtor from any debt— ... (4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny[.]" Plaintiffs have not alleged embezzlement or larceny, so only defalcation is at issue.

To prevail on their complaint, Plaintiffs must prove (1) fiduciary capacity of Debtors; and (2) defalcation by Debtors while acting in their fiduciary capacity. General Produce, Inc. v. Tucker (In re Tucker), No. 06-50092, Adv. No. 06-5107, 2007 WL 1100482, at *2 (Bankr. M.D.

Ga. Apr. 10, 2007). Fiduciary capacity is defined by federal law with reference to state law. Blyler v. Hemmeter (In re Hemmeter), 242 F.3d 1186, 1189-90 (9th Cir. 2001). According to the Eleventh Circuit Court of Appeals, "the term 'fiduciary' is not to be construed expansively, but instead is intended to refer to 'technical' trusts." Quaif v. Johnson, 4 F.3d 950, 953 (11th Cir. 1993) (citations omitted). This may include express trusts created by contract and statutory trusts, but not involuntary trusts such as resulting trusts or constructive trusts. Id. at 953-54. Moreover, "[t]he traditional meaning of fiduciary under state law–loyalty, good faith and fair dealing–is too broad for the purposes of this section. Only a subset of fiduciary obligations is encompassed in the word 'fiduciary' for purposes of § 523(a)(4)." Hosey v. Hosey (In re Hosey), 355 B.R. 311, 322 (Bankr. N.D. Ala 2006); see also Fowler Bros. v. Young (In re Young), 91 F.3d 1367, 1372 (10th Cir. 1996). A technical trust requires property entrusted to the debtor. Young, 91 F.3d at 1371. In addition, the statute must impose trust-like duties, such as segregation of the res. Angelle v. Reed (In re Angelle), 610 F.2d 1335, 1340 (5th Cir. 1980)). For example, in Quaif, the court found fiduciary capacity based on a statute that required insurance agents to segregate and account for certain premiums the agents held on behalf of their customers. Id. at 954. In other words, the statute created an identifiable trust res and imposed specific duties with regard to that res.

      Plaintiffs offered no evidence of a contractual trust, but instead pointed to O.C.G.A. §§ 14-11-301 and 23-2-58 as the basis for Debtors' fiduciary capacity. Section 14-11-301(a) provides that "every member is an agent of the limited liability company for the purpose of its business and affairs[.]" The statute makes no mention of a trust res or any fiduciary obligations. It may establish a commercial relationship, but it does not establish a fiduciary relationship for

6

purposes of § 523(a)(4).  In fact, the only duties imposed on managers of an LLC by Georgia law are set forth in § 14-11-305, which provides in relevant part: "A member or manager shall act in a manner he or she believes in <u>good faith</u> to be in the <u>best interests</u> of the limited liability company and with the care an <u>ordinarily prudent person in a like position</u> would exercise under similar circumstances." O.C.G.A. § 14-11-305(1) (emphasis added).  This variation of the business judgment rule imposes nothing in the way of fiduciary obligations and cannot be the basis for a fiduciary defalcation claim.

      Section 23-2-58, the second statute cited by Plaintiffs, provides:

> Any relationship shall be deemed confidential, whether arising from nature, created by law, or resulting from contracts, where one party is so situated as to exercise a controlling influence over the will, conduct, and interest of another or where, from a similar relationship of mutual confidence, the law requires the utmost good faith, such as the relationship between partners, principal and agent, etc.

This is the sort of broad definition of fiduciary duties that is outside the scope of § 523(a)(4). <u>Young</u>, 91 F.3d at 1372.  Considering this statute for purposes of fiduciary defalcation, the court in <u>Blashke v. Standard</u> (<u>In re Standard</u>), 123 B.R. 444 (Bankr. N.D. Ga. 1991), noted it "generally describes certain relationships as confidential, the result of which is that parties in those relationships have greater reason to rely on representations of the other party.  Nothing in this statute creates a technical or express trust or imposes trust-like duties ...." <u>Id.</u> at 455.  As a result, Plaintiffs cannot rely on this statute to prove fiduciary capacity.

      For the foregoing reasons, the Court concludes Plaintiffs have failed to prove the existence of a  technical trust–either by contract or statute–and, as a consequence, cannot prove fiduciary defalcation by Debtors.  Therefore the Court will enter judgment for Debtors.

An Order in accordance with this Opinion will be entered on this date.

END OF DOCUMENT